Ladder case 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






ON MOTION FOR REHEARING









NO. 03-93-00443-CV






Bruce Reynolds, Appellant



v.



Archbold Ladder Company, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 484,356, HONORABLE JERRY DELLANA, JUDGE PRESIDING









DISSENTING OPINION






 My dissenting opinion in this cause handed down on August 30, 1995, is withdrawn
and the following opinion is substituted therefor.

 Believing that the majority has substituted its judgment for that of the jury, I
respectfully dissent.

 In this case the plaintiff, Reynolds, was injured when he fell off an "A-frame"
ladder. The jury found that the ladder was defective, but also found that Reynolds's own
negligence proximately caused the accident. In answer to a comparative causation question, the
jury found that Reynolds caused 65% of the occurrence and that the defendant caused 35% of the
occurrence. Based on these findings, the trial court properly rendered a take-nothing judgment. 
See Tex. Civ. Prac. & Rem. Code Ann. § 33.001(b) (West Supp. 1995). On appeal, Reynolds
challenges the legal and factual sufficiency of the evidence to support the jury's finding that his
own negligence was a proximate cause of the accident. The majority, concluding that the
evidence was factually insufficient, reverses the judgment and remands the cause for a new trial. 
I am convinced that the trial court's judgment should be affirmed.

 Reynolds testified that the accident occurred as he was descending the ladder; that
he did not have anything in his hands as he was descending; that he was not tipping the ladder;
and that he was not "racking" (twisting) or "walking" the ladder. In short, that he did nothing
to cause the accident. Reynolds's theory of the case was that the ladder suddenly became unstable
as a result of a defective rivet that popped loose from one of the "spreader" bars.

 However, Reynolds's own expert, Rex McLellan, testified on cross-examination
that shortly after the accident Reynolds had told him a story that was inconsistent with the version
to which he testified at trial:


Q: Okay. Now, again, I want to ask you the question that was asked of you
during your deposition and I would like you to read the jury the answer you
gave under oath April 16, 1992. . . . The question is, "Would you relate
what was said during that conversation?"


A: Yes, sir. "I think the main thing that he [Reynolds] told me was in
response to my question of what exactly happened in the accident, and he
said he was on the ladder doing work on a ceiling, or it could have been a
roof, and was either screwing in or screwing something out, and honestly
can't remember which was it was. But as he was rotating the fastener or
screwing, and his body was sort of kiltered at an angle, that he felt the
ladder become unstable and he fell down and injured himself."


(Emphasis added.) This is not mere speculation, but direct evidence of how the accident
occurred.

 Thus, the record contains direct evidence that (1) the accident occurred not as
Reynolds was descending the ladder, but as he was inserting a screw into the wall or ceiling
(which he did using a "Miketa screw gun"); and (2) the accident occurred not while Reynolds was
positioned securely and carefully on the ladder, but as his body was "kiltered at an angle." The
jury was entitled to believe this testimony, and apparently did. From this evidence, the jury was
entitled to conclude, first, that Reynolds was fudging considerably about how the accident
happened. Second, the jury was entitled to conclude from the phrase "kiltered at an angle" that
Reynolds was in fact leaning out from the ladder in some fashion, or at least that Reynolds was
trying to work with his screw gun from a position on the ladder that was not safe and secure. 
This evidence raises a clear inference that Reynolds was not being careful on the ladderin other
words, that he was negligent.

 The central issue at trial was whether the accident was caused by a defective rivet
that popped loose or, instead, by Reynolds's own actions. In addition to the foregoing evidence
that Reynolds had previously told an inconsistent story of how the accident happened, the
defendant's expert, Franklin Appl, testified to conclusions that were consistent with Reynolds
himself being the cause of the accident.


I am of the opinion that while Mr. Reynolds was on the ladder and as he was either
screwing in a screw or as he was starting down that he managed to tip the ladder
to the right and the ladder then was tipping over to the right and Mr. Reynolds'
body, when the ladder starts tipping to the right, will be under the action of gravity
and which will cause it to fall straight down which will cause it to fall or land, a
part of it, on the left side of the ladder and that landing on the left side of the
ladder as the ladder tips over and hits the ground will cause the left side of the
ladder to be racked. That is, pushed to the rear as I demonstrated in the test. And
that impact loading was enough to pry, pop the clinch off the rivet on the right
front spreader. 


On cross-examination, Appl reinforced these conclusions:


Q: Have we covered every possible scenario about how you believe the rivet
failed? In other words, and I only know of one, and that is in the falling
sequence and then when it hit the ground?


A: Well, in the falling and as the ladder is racked and when it hits the ground.


Q: All right. So that is it, just the one?


A: Yes, sir.


Q: There is no other way it could have happened?


A: I don't believe that I can find another way that would happen that would be
consistent with the physical evidence that I found on the ladder.


* * *



A: [I]n my opinion it [the rivet] didn't pop until it was in the falling sequence.


Q: So, in other words, this is kind of one of the questions I wanted to ask you,
Mr. Appl, you know what Bruce Reynolds has said happened in this
incident, don't you?


A: Well, -- well, which story? Which one?


Q: You know he has said that the rivet popped off and jarred him and he lost
his balance, are you aware of that?


A: I have heard, yes.


Q: But you're saying that is not true?


A: I don't think that that is true.


Q: That is not even a possibility as far as you're concerned, is it?


A: No, sir.


 In addition, Appl conducted tests showing that "the load carrying capabilities of the
ladder is not compromised even if the rivet is totally go[ne]." He also demonstrated that the
absence of a washer would not cause the rivet to fail. Finally, in his analysis of the ladder, he
found "a great many indications that the ladder was racked with the left side toward the rear." 
All of this evidence supports the conclusion obviously reached by the jury that Reynolds's own
actions were the primary reason the ladder tipped, and that the rivet most likely failed when the
ladder twisted during the fall or when it hit the ground.

 Reynolds's expert, McLellan, had a different theory of how the accident occurred,
but that fact alone does not make the jury's finding clearly wrong and manifestly unjust; it does
not clearly demonstrate bias; and it does not shock my conscience. It was the jury's prerogative
to weigh the evidence, to judge the credibility of the witnesses, and to choose between competing
inferences and conflicting theories of the case.

 This is simply a case where the jury did not believe the accident happened the way
the plaintiff said it did. Contrary to Reynolds's trial testimony, the jury believed that Reynolds
did have substantial responsibility for the accident. In my opinion, there is ample evidence to
support that conclusion. I would affirm the trial court's judgment.






 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Aboussie and Jones

Filed: November 1, 1995

Do Not Publish



ked. That is, pushed to the rear as I demonstrated in the test. And
that impact loading was enough to pry, pop the clinch off the rivet on the right
front spreader. 


On cross-examination, Appl reinforced these conclusions:


Q: Have we covered every possible scenario about how you believe the rivet
failed? In other words, and I only know of one, and that is in the falling
sequence and then when it hit the ground?


A: Well, in the falling and as the ladder is racked and when it hits the ground.


Q: All right. So that is it, just the one?


A: Yes, sir.


Q: There is no other way it could have happened?


A: I don't believe that I can find another way that would happen that would be
consistent with the physical evidence that I found on the ladder.


* * *



A: [I]n my opinion it [the rivet] didn't pop until it was in the falling sequence.


Q: So, in other words, this is kind of one of the questions I wanted to ask you,
Mr. Appl, you know what Bruce Reynolds has said happened in this
incident, don't you?


A: Well, -- well, which story? Which one?


Q: You know he has said that the rivet popped off and jarred him and he lost
his balance, are you aware of that?


A: I have heard, yes.


Q: But you're saying that is not true?


A: I don't think that that is true.